IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Faustino Xavier Betancourt-Colon,

Plaintiff,

V.

Supermercados Maximo, Inc.

Defendant.

**Civil No. 3:22-01274 (GMM)**

## OPINION AND ORDER

Before the Court are Faustino Xavier Betancourt-Colón's ("Plaintiff" or "Betancourt") *Motion for Partial Summary Judgment* and Supermercados Máximo, LLC's ("SuperMax") *Motion for Summary Judgment and Memorandum of Law in Support*. (Docket Nos. 45; 42). The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's *Motion for Partial Summary Judgment* and **GRANTS IN PART AND DENIES IN PART** SuperMax's *Motion for Summary Judgment and Memorandum of Law in Support*.

### I.   FACTUAL BACKGROUND

This case arises from alleged violations of Title III of the Americans with Disabilities Act ("ADA"), in which Plaintiff contends that, because of his disability, he was denied access and equivalent use of a place of public accommodation, here a supermarket operated by SuperMax ("SuperMax store"). (Docket No.

Civil No. 3:22-01274 (GMM)
Page -2-

9-2). Plaintiff alleges that there are a series of architectural barriers in the SuperMax store that denied Plaintiff "full, free, and spontaneous access to the Property" resulting in his incursion of physical and psychological damages. (Id. at 8).

Specifically, Plaintiff claims that he suffers from a range of disabilities that limit his mobility and require him to use a wheelchair or scooter. (Id. at 3). On or around May 3, 2022, Plaintiff states that he visited the Supermax store, which is located in the mall Plaza Guaynabo. (Id. at 5). At the SuperMax store, Betancourt alleges that he encountered various architectural barriers including a poorly maintained parking lot, cashier checkout aisles that were too narrow and lacked the international accessibility symbol label, and various other countertops throughout the SuperMax store that exceeded the ADA Accessibility Guidelines' ("ADAAG") maximum height requirements. (Id. at 7-8). Later, during Plaintiff's deposition, he alleged additional ADA violations including: (1) accessibility barriers in the restrooms; and (2) countertops at the customer service and meat market areas of the Supermax store that exceeded the ADAAG's maximum height requirements. (Docket Nos. 42 at 2-4; 45 at 2). Plaintiff's complaint also alleged that SuperMax non-structural policies and procedures violated the ADA but provided no further details on this accusation. (Docket No. 9-2 at 12).

Civil No. 3:22-01274 (GMM)
Page -3-

Following the initiation of this lawsuit, SuperMax made a range of amendments and modifications to the SuperMax store. Specifically, it made multiple renovations to the restrooms. (Docket Nos. 42 at 4; 42-13 at 12-18). It also integrated counters within the required maximum 36-inch height from the finished floor elevation at the Açai Shop, Café Max, and the plant section of the SuperMax store. (Docket Nos. 42 at 4; 42-13 at 10-11). Moreover, SuperMax supplied black tables[1] in close proximity to both the meat market and customer service areas of the SuperMax store with heights measuring under the required maximum 36 inches tall. (Docket Nos. 42 at 4; 42-13 at 11). Finally, on December 11, 2023, an expert inspected the SuperMax store and reported that the checkout aisles and service counters complied with the 1991 ADAAG standards and that the restrooms complied with both the 1991 and 2010 ADAAG. (Docket Nos. 42 at 4; 42-13 at 7-9).

## II.  PROCEDURAL BACKGROUND

Betancourt filed the Complaint against SuperMax on May 19, 2022 in the Commonwealth of Puerto Rico's Court of First Instance, Bayamón Superior Court, under Civil No. BY2022CV02586, claiming violations under Title III of the ADA and seeking injunctive relief

---

[1] SuperMax characterizes the black tables as 'auxiliary counters.' (Docket Nos. 42 at 4; 57 at 3).

Civil No. 3:22-01274 (GMM)
Page -4-

and attorney's fees.[2] (Docket No. 9-2). On June 14, 2022, SuperMax removed this case to federal court. (Docket No. 1).

On September 26, 2023, Plaintiff filed a *Motion for Partial Summary Judgment*. (Docket No. 38). Plaintiff submitted a revised *Motion for Partial Summary Judgment* on December 15, 2023, thereby superseding the motion filed on September 25, 2023. (Docket No. 45). Therein, Plaintiff argues that: (1) the customer service and meat market counters in the SuperMax store exceeded the ADAAG's maximum height requirement[3] and (2) the auxiliary black tables placed next to these counters were insufficient to remediate the SuperMax store's ADA violations, as they did not provide substantially equivalent services to persons with disabilities. (Id.). For relief, Plaintiff requested that: (1) the Court compel SuperMax to further modify the SuperMax store's facility to bring it into ADA compliance; and (2) grant him attorney's fees, costs, and litigation expenses, pursuant to 42 U.S.C. § 12205 and Section 505 of the Rehabilitation Act. (Id.).

Also on December 15, 2023, SuperMax filed a *Motion for Summary Judgment and Memorandum of Law in Support*, contending that Plaintiff's claim was moot given that SuperMax had already

---

[2] Plaintiff also named "Fulanos de Tal 1-100" ("So-And-So 1-100") as a defendant referring to unknown natural or legal persons that are owners, landlords, tenants, and operators of the property in question that is operated by the named Defendants.
[3] Plaintiff asserts that the customer service counter and the meat market counter measure 47 inches and 51 inches respectively, thus exceeding the 36-inch maximum set by the 2010 ADAAG. (Docket No. 45 at 2).

corrected all of Plaintiff's alleged ADA violations within their control. (Docket No. 42). Thus, SuperMax requests the dismissal of Plaintiff's claims and asserts that Betancourt, as the non-prevailing party, is not entitled to attorney's fees under the law. (Id.).

On December 29, 2023, Betancourt filed a *Response in Opposition to Supermercados Maximo's Motion for Summary Judgment* contending that the installation of auxiliary black tables designed to remediate any alleged ADA violations was insufficient as they failed to provide disabled persons a "substantial equivalent" experience to that available to non-disabled persons. (Docket No. 56 at 3). (Id. at 8). On January 9, 2024, SuperMax filed its *Opposition to Plaintiff's Motion for Partial Summary Judgment* stating that the facility presently complied with the ADA. (Docket No. 57).

### III. LEGAL STANDARD

A.   Fed. R. Civ. P. 56

Federal Rule of Civil Procedure Rule 56 governs motions for summary judgment. The Court shall only grant summary judgment "when the moving party proves two things: (1) that there is no genuine issue of material fact and (2) that it is entitled to judgment as a matter of law." Dones-Pabon v. Hosp. Auxilio Mutuo De Puerto Rico, Inc., Civil No. 20-1628 (CVR), 2023 WL 3434780, at *2 (D.P.R.

May 11, 2023) (internal quotations omitted); *see also* <u>Tolan v. Cotton</u>, 572 U.S. 650, 656-57 (2014); Fed. R. Civ. P. 56. A genuine dispute exists if "a rational factfinder, viewing the evidence in the light most flattering to the party opposing summary judgment, could resolve the dispute in that party's favor." <u>Grace v. Bd. of Trustees, Brooke E. Bos.</u>, 85 F.4th 1, 10 (1st Cir. 2023) (*citing* <u>Nat'l Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995)) (internal quotation marks omitted). Moreover, a fact is material "if it has the potential of affecting the outcome of the case." <u>Hamdallah v. CPC Carolina PR, LLC</u>, 91 F.4th 1, 16 (1st Cir. 2024) (*quoting* <u>Taite v. Bridgewater State University, Board of Trustees</u>, 999 F.3d 86, 93 (1st Cir. 2021)). In making its determination, the Court will look to "the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. . ." <u>Johnson v. University of Puerto Rico</u>, 714 F.3d 48, 52 (1st Cir. 2013) (*citing* <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 175 (1st Cir. 2008)).

The movant has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." <u>Condado 3 CFL, LLC v. Reyes Trinidad</u>, 312 F.Supp.3d 255, 258 (D.P.R. 2018) (*quoting* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect

Civil No. 3:22-01274 (GMM)
Page -7-

to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (*quoting* DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)). Indeed, the non-movant is required to "present definite, competent evidence to rebut the motion." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (*quoting* Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

The Court "does not act as trier of fact when reviewing the parties' submissions and so cannot superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon conflicting evidence." Betancourt-Colon v. Arcos Dorados Puerto Rico, LLC, Civil No. 21-1311 (BJM), 2023 WL 171123, at *1 (D.P.R. Jan. 12, 2023) (*citing* Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)) (internal quotation marks omitted). Rather, the Court must draw "all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (*quoting* Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). "The Court must also refrain from engaging in assessing the credibility or weight of the evidence presented." Rodriguez on behalf of P.V.M. v. Mennonite Gen. Hosp., Inc., Civil No. 21-01286 (GMM), 2023 WL 3766099, at *8 (D.P.R. June 1, 2023)

Civil No. 3:22-01274 (GMM)
Page -8-

(*citing* <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000)). "Facts which are properly supported 'shall be deemed admitted unless properly controverted' and the Court is free to ignore such facts that are not properly supported." <u>BahiaG8, LLC v. Sabedoria, LLC</u>, Civil No. 23-1053 (GMM), 2023 WL 6923401, at *2 (D.P.R. Oct. 19, 2023) (*citing* <u>Rodríguez-Severino v. UTC Aerospace Sys.</u>, No. 20-1901, 2022 WL 15234457, at *5 (1st Cir. Oct. 27, 2022)).

    B.   <u>Local Civ. R. 56</u>

Local Civ. R. 56 also controls motions for summary judgment in this District. *See* Local Civ. R. 56. Pursuant to Local Rule 56, the non-moving party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Local Civ. R. 56(c). If a fact is not admitted, "the opposing statement shall support each denial or qualification by a record citation. . ." <u>Id.</u> In its opposing statement, the non-movant can include additional facts supported by record citations. *See* <u>id.</u> The party opposing the motion for summary judgment may also "submit a separate statement of facts which they believe are in controversy." <u>Matos Lugo v. Sociedad Espanola de Auxilio Mutuo y Beneficencia de Puerto Rico</u>, Civil No. 20-1314 (CVR), 2023 WL 8238896, at *2 (D.P.R. Nov. 27, 2023).

Civil No. 3:22-01274 (GMM)
Page -9-

Failure to comply with Local Rule 56(c) allows the Court to accept a party's proposed facts as stated. *See* López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023); *see also* Natal Pérez v. Oriental Bank & Trust, 291 F.Supp.3d 215, 219 (D.P.R. 2018) ("If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as uncontroverted."). Litigants thus ignore Local Rule 56(c) at their peril. *See* López-Hernández, 64 F.4th at 26.

## IV.  FINDINGS OF FACT

The Court examined SuperMax's *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (Docket No. 42-2); Plaintiff's *Statement of Uncontested Material Facts* (Docket No. 45-1); Plaintiff's *Opposition to Supermercados Maximo's Statement of Uncontested Material Facts* (Docket No. 56-1); and SuperMax's *Opposing Statement of Uncontested Material Facts* (Docket No. 57), in tandem with all the documents cited and attached thereto. The Court also considered the certified English translations of the exhibits filed at Docket No. 58.

Accordingly, the Court makes the following findings of fact and treats them as established pursuant to Fed. R. Civ. P. 56(g):

1. SuperMax is a for-profit domestic corporate supermarket located at Plaza Guaynabo registered under the corporate registry of Puerto Rico with the identification number 130500. (Docket Nos. 42-2 ¶ 1; 45-1 ¶ 4; 45-2 ¶ 5; 56-1 ¶ 1; 57 at 2 ¶ 4).

2.   SuperMax operates the SuperMax store, known as
     "SuperMax," out of a commercial property in Plaza
     Guaynabo. (Docket Nos. 42-3 at 1-2; 45-1 ¶ 4; 57 at
     2 ¶ 4).

3.   The premises where the SuperMax store operates were
     built prior to 2012. (Docket Nos. 42-3 at 1; 45-1
     ¶ 16, 57 at 6 ¶ 16).

4.   Prior to 2010, the premises of the SuperMax store
     at Plaza Guaynabo was previously occupied by Grande
     and used as a supermarket. (Docket Nos. 42-2 ¶ 5;
     42-4 at 3; 56-1 ¶ 5; 57 at 8 ¶ 4).

5.   On July 21, 2010, SuperMax and A. Cordero Badillo,
     Inc. executed an *Asset Purchase Agreement*. Pursuant
     to the Purchase Agreement, SuperMax bought A.
     Cordero Badillo, Inc.'s rights under the *Agreement
     of Lease* for the store located at Plaza Guaynabo to
     use as a supermarket. The *Agreement of Lease* had
     originally been executed between A. Cordero Badillo
     and Fideicomiso Hispamer in August 2005. (Docket
     Nos. 42-2 ¶¶ 2-3, 42-3 at 1-2; 42-4; 42-5; 42-6;
     56-1 ¶¶ 2-3; 57 at 5-7 ¶¶ 1-3, 15, 17).

6.   SuperMax is not in charge of the parking lots.
     Specifically, the Agreement of Lease provides in
     part "Landlord shall keep and maintain all of the
     Common Area of the Shopping Center in good
     condition and repair. The obligation of the
     Landlord to maintain the Common Area shall include,
     without limitation. . .maintaining all paving (and
     repaving as necessary) so that parking lot is kept
     in first class condition and substantially free of
     cracks, holes and uneven spots. . .maintaining
     signs, markers, painted lines and other means and
     methods of pedestrian and vehicular traffic
     control; and maintaining any plantings and
     landscaped areas." (Docket Nos. 42-4 ¶ 6; 42-6 at
     16-17; 56-1 ¶ 6).

7.   The Human Resources Department of SuperMax gives
     verbal training to its employees when they are
     hired, about anti-discrimination practices and the
     proper treatment of all its customers. (Docket Nos.

42-4 ¶ 8; 42-3 at 3; 42-8 at 4; 56-1 ¶ 8; 57 at 8-9 ¶ 6).

8.  The SuperMax store has signs displayed both at the entrance and throughout the premises that inform customers about how they can get help to acquire goods and services. (Docket Nos. 42-4 ¶ 10; 56-1 ¶ 9; 57 at 9 ¶ 8).

9.  Plaintiff is a resident of Los Lirios public housing in Cupey, San Juan, Puerto Rico. (Docket Nos. 45-1 ¶ 1; 45-2 ¶ 1; 57 at 2 ¶ 1).

10. Betancourt suffers from medical disabilities that limit his ability to walk, consequently requiring him to use a scooter or wheelchair for mobility. Specifically, he has the following diagnosed disabilities: (1) hypertension, (2) type II diabetes mellitus, (3) diabetic neuropathy, (4) osteoarthritis, (5) inflammatory arthritis, (6) hydrocephalus with a brain shunt, (7) congestive heart failure, (8) deformity in both feet, (9) chronic obstructive pulmonary disease, (10) sleep apnea, and (11) degenerative joint disease of the lumbar spine. (Docket Nos. 45-1 ¶ 2; 45-2 ¶¶ 2-3; 57 at 2 ¶ 2).

11. Plaintiff visits the SuperMax store located at Plaza Guaynabo frequently. (Docket Nos. 42-2 ¶ 12; 56-1 ¶ 11).

12. On May 3, 2022, Betancourt visited the SuperMax store located at Plaza Guaynabo with the intention of purchasing groceries. (Docket Nos. 45-1 ¶ 3; 45-2 ¶ 4; 57 at 2 ¶ 3).

13. During the visit on May 3, 2022, the cash registers designated for persons with disabilities were open. (Docket Nos. 42-4 ¶ 13; 56-1 ¶ 12).

14. The SuperMax store has three checkout aisles with cash registers designated for persons with disabilities, each measuring 37.5 inches high. (Docket Nos. 42-2 ¶ 14; 42-13 at 8).

15. Following the filing of this lawsuit, SuperMax installed auxiliary black tables in close proximity to the SuperMax store's customer service and meat market counters. On the tables, there are signs with the message "press the bell button for service" in both English and Spanish, accompanied by the international accessibility symbol. (Docket Nos. 45-1 ¶ 8-9; 45-2 ¶¶ 9-10; 57 at 3 ¶¶ 8-9).

16. Following the filing of this lawsuit, SuperMax integrated a counter within the required maximum 36-inch height from the finished floor elevation at the Açaí Shop. (Docket Nos. 42-2 ¶ 15; 42-13 at 10; 56-1 ¶ 14; 57 at 9 ¶ 10).

17. Following the filing of this lawsuit, SuperMax integrated a counter within the required maximum 36-inch height from the finished floor elevation at Café Max and the plant section of the SuperMax store. (Docket Nos. 42-2 ¶ 16; 42-13 at 10; 56-1 ¶ 15; 57 at 9 ¶ 11).

18. On December 11, 2023, an expert hired by SuperMax inspected the SuperMax store and concluded, in a submitted report containing labeled photos, that the checkout aisles and the service counters complied with the 1991 ADA Standards. (Docket No. 42- 2 ¶ 26; 57 at 10 ¶ 14).

## V.   APPLICABLE LAW AND ANALYSIS

### A.   Prima Facie Claim under Title III of the Americans with Disabilities Act

Congress passed the ADA "to address the major areas of discrimination faced day-to-day by people with disabilities, hoping to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such

individuals." Betancourt-Colon v. Kimco PR Mgmt. Corp., Civil No.
22-1055 (DRD), 2023 WL 6393065, at *3 (D.P.R. Sept. 30, 2023)
(internal citations omitted); *see also* Dudley v. Hannaford Bros.
Co., 333 F.3d 299, 303 (1st Cir. 2003); 42 U.S.C. § 12101(a)(6),
§ 12101(b)(4)).

Title III of the ADA provides:

> [n]o individual shall be discriminated against on the
> basis of disability in the full and equal enjoyment of
> the goods, services, facilities, privileges, advantages,
> or accommodations of any place of public accommodation
> by any person who owns, leases (or leases to), or
> operates a place of public accommodation.

42 U.S.C. § 12182(a). "To establish a *prima facie* Title III case,
a plaintiff must demonstrate that (1) he or she has a qualified
disability under the ADA, (2) the defendant operates a place of
public accommodation, and (3) the plaintiff was discriminated
against as a result of his or her disability." CADFI Corp. v.
Puerto Rico Tel. Co., No. CV 22-1246 (BJM), 2024 WL 866269, at *2
(D.P.R. Feb. 29, 2024) (*quoting* Medina-Rodriguez v. Fernandez
Bakery, Inc., 255 F.Supp.3d 334, 341 (D.P.R. 2017)) (internal
quotations omitted).

Here, Parties concede that the first two elements of a Title
III ADA claim are met. First, it is uncontested that Betancourt is
a disabled individual under the ADA. (Docket Nos. 45 at 8; 45-1 ¶
2; 57 at 2 ¶ 2). Secondly, Parties agree that SuperMax qualifies
as a place of "public accommodation" under 42 U.S.C. § 12182(a).

Civil No. 3:22-01274 (GMM)
Page -14-

(Docket Nos. 9-2 ¶ 2(a); 42-2 ¶ 1; 45 at 8-9; 45-1 ¶ 4; 57 at 2 ¶ 4). The Court thus focuses its analysis on the final element of Plaintiff's Title III ADA claims: whether he was discriminated against due the SuperMax store's alleged structural and non-structural barriers.

1.   Structural Barriers that Amount to Discrimination under the ADA

Discrimination can include "a failure to remove architectural barriers. . .where such removal is readily achievable." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011) (*quoting* 42 U.S.C. § 12182(b)(2)(A)(iv)); *see also* Arcos Dorados Puerto Rico, LLC, 2023 WL 171123, at *2 (*quoting* 42 U.S.C. §12182(b)(2)(A)(iv))(Discrimination on the basis of one's disability includes "a failure to remove architectural barriers, and communication barriers that are structural in nature."). "[A]rchitectural barriers to access need not completely bar a plaintiff from accessing goods and services to be discriminatory." Medina-Rodriguez v. Fernandez Bakery, Inc., 255 F.Supp.3d at 343 (*citing* Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1041 n.4 (9th Cir. 2008)). Moreover "[d]iscrimination within Title III of the ADA also includes altering a building and failing to ensure that the altered portions of the facility are readily accessible to and usable by individuals with disabilities." Id. (*quoting* 42 U.S.C. § 12183(a)(2)) (internal quotation marks omitted).

A plaintiff's Title III ADA cause of action based on "allege[d] discrimination due to the presence of architectural barriers in an existing facility. . .must further demonstrate that: (1) the Store presents a barrier prohibited under the ADA. . .and (2) removal of the barrier is "readily achievable" or, if not readily achievable, that Defendants could have provided goods and services to Plaintiff through alternative methods without much difficulty or expense." Hernandez v. Roberts of Woodside, Civil No. 19-07911 (TSH), 2022 WL 19315, at *15 (N.D. Cal. Jan. 3, 2022), appeal dismissed, Civil No. 22-15193, 2022 WL 3139015 (9th Cir. June 22, 2022); *see also* Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1034 (9th Cir. 2020); 42 U.S.C. §§ 12182(b)(2)(A)(iv)-(v).

Congress charged the Department of Justice ("DOJ") with the creation of specific standards for compliance with Title III of the ADA. *See* 42 U.S.C. § 12186(b). As such, the DOJ promulgates ADAAG which provide building standards for new constructions and facilities renovations that "shall be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board in accordance with section 12204 of this title." 42 U.S.C. § 12186. "Both ADAAG and DOJ's guidelines have been through multiple iterations since Congress passed the ADA in 1990." Kirola v. City & Cnty. of San Francisco, 860 F.3d 1164, 1177 (9th Cir. 2017). Thus, in analyzing

the ADA compliance for each alleged architectural barrier in the SuperMax store, the Court must first determine the applicable iteration of the ADAAG.

For buildings that existed at the time the ADA was passed, a party need only remove "architectural barriers" when doing so is "readily achievable." *See* 42 U.S.C. § 12182(b)(2)(A)(iv). Structures that were built and occupied prior to January 26, 1993 are considered "existing facilities" and are governed by less stringent accessibility standards. 28 C.F.R. § 36.401(a); *see also* Am. Ass'n of People with Disabilities v. Harris, 647 F.3d 1093, 1101 (11th Cir. 2011). Conversely, new construction and alterations must comply with the applicable ADA design standards unless the entity can establish that compliance with such guidelines is "structurally impracticable." 42 U.S.C. § 12183(a)(1); *see also* U.S. v. Hoyts Cinemas Corp., 380 F.3d 558, 561 (1st Cir. 2004)); Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist., 484 F.Supp.3d 346, 385 (E.D. La. 2020), aff'd sub nom. Bailey v. France, 852 F. App'x 852 (5th Cir. 2021) (*citing* 28 C.F.R. § 36.402(c)) ("Public accommodations built or altered after January 26, 1992,[4] must comply with both the Title

---

[4] Pursuant to the ADAAG, a facility is only a new construction subject to the ADAAG when it is "designed and constructed for first occupancy after January 26, 1993. . .(i) If the last application for a building permit or permit extension for the facility is certified to be complete, by a State, County or Local government after January 26, 1992 (or, in those jurisdictions where the government does not certify completion of application, if the last application for a building permit or permit extension for the facility is received by the

Civil No. 3:22-01274 (GMM)
Page -17-

III regulations. . .and the ADAAG unless the nature of an existing facility makes it virtually impossible to comply fully with applicable accessibility standards through a planned alteration.") (internal quotations omitted).

Thus, "[t]he date of a facility's construction is a crucial piece of information when analyzing an ADA claim." Arcos Dorados Puerto Rico, LLC, 2023 WL 171123, at *2. Analogously, the date of an alteration to a building is a key consideration in a Title III ADA review. Public accommodations that were newly constructed or altered after January 26, 1993 but before September 15, 2010 must comply with the 1991 ADAAG Standards. See 28 C.F.R. § 36.406(a)(1). If physical construction or alterations were initiated on or after September 15, 2010, but before March 15, 2012, then the building may comply with either the 1991 Standards or the 2010 standards. See id.; see also 28 C.F.R. § 35.151. However, if a public accommodation is required to comply with the 1991 standards but does not, alterations must be made pursuant to the 2010 standards. See 28 C.F.R. § 36.406(a)(5)(ii). Lastly, constructions and alterations commenced on or after March 15, 2012 are subject to the 2010 ADAAG standards. See 28 C.F.R. § 36.406(a)(1); see also 28 C.F.R. § 35.151.

---

State, County, or local government after January 26, 1992); and (ii) If the first certificate of occupancy for the facility is issued after January 26, 1993." 28 C.F.R. 36.401(a)(2)(i-ii).

Civil No. 3:22-01274 (GMM)
Page -18-

Here, the Parties agree that the facility leased by SuperMax was constructed prior to 2012. (Docket Nos. 42-3 at 1; 45-1 ¶ 16; 57 at 6 ¶ 16). It is also uncontested that the Agreement of Lease that was transferred to SuperMax was originally executed in August 2005. (Docket Nos. 42-2 ¶¶ 2-3, 42-3 at 1-2; 42-4; 42-5; 42-6; 56-1 ¶¶ 2-3; 57 at 5-7 ¶¶ 1-3, 15, 17). The record does not indicate the date of the Supermax store's construction. However, neither party argues that the Supermax store's premises were constructed before January 26, 1993. The Court will accordingly classify the Supermax store as a new construction and not an existing facility under the ADA. Thus, to overcome Plaintiff's Title III ADA claims regarding architectural barriers in the Supermax store, SuperMax must demonstrate that it complies with the applicable ADAAG unless it can demonstrate that doing so would be structurally impracticable. *See* Hoyts Cinemas Corp., 380 F.3d at 561.

a.   The parking lot and restrooms

Since the filing of Plaintiff's Complaint, some of the alleged ADA violations present at the SuperMax store have been addressed or invalidated and thus, are no longer at issue. Firstly, Parties agree that SuperMax does not control the SuperMax store's parking lot and thus cannot be held responsible for any ADA violations therein. (Docket Nos. 42 at 12; 42-4 ¶ 6; 56-1 ¶ 6). Secondly, Parties concur that SuperMax's modifications to the SuperMax store's restrooms brought them into ADA compliance, and thus, no

cause of action related to those amenities remains. (Docket Nos. 42 at 14-17; 42-13 at 12-18); *see also* (Docket No. 56-1 at 6 ("The Plaintiff acknowledges, with gratitude, the removal of barriers at property's restroom, which renders the claims herein moot.")). Thus, the only matters in dispute are the alleged ADA violations related to SuperMax store's counters and auxiliary service tables.

### b. SuperMax store's counters

In a nutshell, SuperMax argues that the auxiliary service tables at the customer service and meat market areas of the SuperMax store; the integrated counters at the Açaí Shop, Café Max, and the plant section of the SuperMax store; and the SuperMax store's checkout aisles all comply with the 1991 ADA Guidelines. Plaintiff disputes this, claiming that even after SuperMax's modifications, the SuperMax store still fails to provide all shoppers with equitable access and treatment.

### i. Guidelines applicable to the customer service and meat market counters

Plaintiff and SuperMax dispute whether and when alterations to the SuperMax store, specifically the alleged replacement of the customer service and meat market counters, were made. Betancourt alleges under penalty of perjury that the customer service and meat market counters were installed after 2012. (Docket Nos. 45 at 2, 10; 45-1 ¶ 17; 56 at 2). The counters installation, he argues, constitutes an alteration under the ADA, and thus, the Court should

analyze those counters under the 2010 ADAAG. (Id.). SuperMax conversely asserts that no alterations were made to the SuperMax store after January 26, 1992, and thus, the 1991 ADAAG are the correct standard to apply to this dispute. (Docket No. 57 at 6 ¶ 17, 11). The Court, thus, must first determine if the alleged replacements of the customer service and meat department counters constituted alterations under the ADA and the ADAAG.

Alterations under the ADA are defined as changes to a building that "affect the usability of the building or facility or part thereof." 28 C.F.R. Pt. 36, App. D § 3.5; 28 C.F.R. § 35.151(b)(1). "Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions. Normal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility." 28 C.F.R. § 36.402; *see also* Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005).

Factors courts consider when determining if a facility modification amounts to an alteration under the ADA include:

1.   The cost of the modification relative to the size of the facility or the pertinent part thereof;

Civil No. 3:22-01274 (GMM)
Page -21-

2. The scope of the modification considering the part of the facility being modified;

3. The purpose of the modification considering whether the modification's aim was for facility maintenance, improvement, or to change a facility's function; and

4. If the modification merely impacted the facility's surfaces or if it changed the realty's structure and/or fixtures.

*See* Hernandez, Civil No. 19-07911 (TSH), 2022 WL 19315, at *19; D'Lil v. Riverboat Delta King, Inc., 59 F.Supp.3d 1001, 1012 (E.D. Cal. 2014); Roberts v. Royal Atl. Corp., 542 F.3d 363, 369 (2d Cir. 2008)

Here, Plaintiff offers no evidence to satisfy his burden of proof that the alleged 2013 and 2014 counter replacements rendered the SuperMax store or the counter areas thereof materially "new" by altering the SuperMax store's usability in any substantial way. *See* Hernandez, Civil No. 19-07911 (TSH), 2022 WL 19315, at *19 (holding that a plaintiff failed to meet his burden of proof by not providing meaningful evidence concerning the four factors that changes to a store "including the installation of a new deli counter, meat counter, five cash registers, grocery shelving. . ." were alterations under the ADA); *see also* Roberts v. Royal Atl. Corp., 542 F.3d at 370 ("The concept of alteration seems generally to exclude from 'alterations' those modifications that essentially preserve the status and condition of a facility, rather than rendering it materially 'new' in some sense.") Thus, absent

Civil No. 3:22-01274 (GMM)
Page -22-

material evidence that the alleged post-2012 installation of new
customer service and meat market counters at the SuperMax store
rendered the SuperMax store materially "new" in some manner, the
Court finds that Defendant may comply with either the 1991 or the
2010 ADAAG. *See* 28 C.F.R. § 36.406(a)(1); 28 C.F.R. § 35.151.[5]

### ii. The customer service counter

Betancourt argues that the customer service counter at the
SuperMax store's main entrance, which functions as a point-of-sale
for certain items, exceeds the maximum permissible height for ADA
compliance. Specifically, Plaintiff alleges that it measures 47
inches high. (Docket Nos. 45-1 ¶ 5(a); 45-2 ¶ 6). In response,
SuperMax says that by providing an 'auxiliary counter' measuring
33.75 inches tall, within the ADAAG's required maximum height, the
customer service counter complied with the ADA. (Docket Nos. 42-
13 at 11; 57 ¶ 5(a); 57-2 at 11). The 'auxiliary counter' provided
was a service table placed directly against the higher customer
service counter area. (Docket Nos. 42-13 at 11; 45 at 14).
Betancourt asserts, however, that SuperMax's remedial measure is
insufficient to bring the Property into compliance with the ADA,
as the auxiliary service table fails to provide "equivalent

---

[5] The Court does however note that should SuperMax fail to comply with the 1991
ADAAG Standards, it must make facility alterations pursuant to the standards
set in the 2010 guidelines. 28 C.F.R. § 36.406(a)(5)(ii).

Civil No. 3:22-01274 (GMM)
Page -23-

facilitation" to individuals with disabilities. (Docket No. 56-1
¶ 16).

The 1991 ADAAG provide different requirements for counters
depending on whether they: (1) have "cash registers and are
provided for sales or distribution of goods or services to the
public,"; or (2) do "not have a cash register but at which goods
or services are sold or distributed." 28 C.F.R. Pt. 36, App. D §
7.2(1)-(2). Photos submitted by both Parties on the record show
that the customer service counter contains a cash register. (Docket
No. 42-13 at 11; 45 at 14).[6] Thus, the service counter must comply
with § 7.2(1) of the 1991 ADA accessibility requirements.

Section 7.2(1) of the 1991 ADAAG provides:

> In. . .miscellaneous retail stores where counters have
> cash registers and are provided for sales or
> distribution of goods or services to the public, at least
> one of each type shall have a portion of the counter. .
> .with a maximum height of 36 in (915 mm) above the finish
> floor. . .The accessible counters must be dispersed
> throughout the building or facility. In alterations
> where it is technically infeasible to provide an
> accessible counter, an auxiliary counter meeting these
> requirements may be provided.

28 C.F.R. Pt. 36, App. D § 7.2(1); *see also* <u>Betancourt-Colon v.
Plaza Las Americas, Inc.</u>, Civil No. 23-1338 (ADC), 2024 WL 866271,
at *4 (D.P.R. Feb. 29, 2024).

---

[6] As such, the Court finds that both Betancourt and SuperMax erred in applying
section 7.2(2) to the customer service counter. Rather, said counter's
compliance with the ADA must be evaluated pursuant to section 7.2(1).

Civil No. 3:22-01274 (GMM)
Page -24-

In the instant case, Parties do not dispute that the customer service counter exceeded the maximum 36-inch height limit. Parties also agree that SuperMax provided an auxiliary service table in close proximity to the customer service counter. The 1991 ADAAG clearly states that the provision of an auxiliary counter meeting the requirements set forth under § 7.2(1) is _only_ an adequate remedy where alterations would be "technically infeasible." 28 C.F.R. Pt. 36, App. D § 7.2(1); _see also_ Plaza Las Americas, Inc., 2024 WL 866271, at *4. The 1991 ADAAG define technically infeasible as having:

> little likelihood of being accomplished because existing structural conditions would require removing or altering a load-bearing member which is an essential part of the structural frame; or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features which are in full and strict compliance with the minimum requirements for new construction and which are necessary to provide accessibility.

28 C.F.R. Pt. 36, App. D § 4.1.6(1)(j). SuperMax failed to argue that it would be technologically infeasible to make the necessary modifications to the customer service countertop to bring it into ADA compliance. Thus, SuperMax's provision of the auxiliary service table is an insufficient remedial measure for the customer service counter which possesses a cash register and exceeds the maximum height limit set forth under the 1991 ADAAG.

As such, SuperMax's request for summary judgment on this point is **DENIED** and Betancourt's request for summary judgment is **GRANTED**.

### iii. The meat market counter

Betancourt also argues that the meat department counter exceeded the maximum permissible height for ADA compliance. Specifically, he contends that this counter measures 51 inches high. (Docket Nos. 45 at 2; 45-1 ¶ 5(b); 45-2 ¶ 6.2). SuperMax avers that its provision of an auxiliary counter in the form of a service table measuring 33.75 inches tall brings the meat market counter into ADA compliance. (Docket Nos. 42-2 ¶ 18; 42-13 at 11; 57 ¶ 5(b)). Plaintiff, however, contends that: (1) the auxiliary table's location prevents anyone from standing behind it; (2) its surface is partially obstructed by items such as signs and a bell; and (3) it's unattended by SuperMax store personnel. (Docket No. 56-1 ¶ 17). As such, he argues that the table does not serve as an equal facilitation under the ADAAG standards. (Id.).

The photographic record demonstrates that the main counter at the meat market department does not have a cash register. (Docket Nos. 42-13 at 11; 45 at 14). As such, in evaluating the meat market counter's ADA compliance, the Court applies section 7.2(2) of the 1991 ADAAG. Pursuant to section 7.2(2), counters that do not have cash registers must provide either:

    (i)    a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm); or

    (ii)    an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided; or

(iii)   equivalent facilitation shall be provided (e.g., at a hotel registration counter equivalent facilitation might consist of: (1) provision of a folding shelf attached to the main counter on which an individual with a disability can write, and (2) use of the space on the side of the counter or at the concierge desk, for handing materials back and forth).

28 C.F.R. Pt. 36, App. D § 7.2(2)(emphasis added).

The Parties do not dispute that the meat market counter exceeds 36 inches and thus does not meet the requirement set out under § 7.2(2)(i). It is also uncontested that SuperMax installed an auxiliary service table with a maximum height of 33.75 inches directly adjacent to the meat market counter. SuperMax characterizes the table as an "auxiliary counter" under section 7.2.(2)(ii) of the 1991 ADAAG. (Docket Nos. 42 at 4; 57 at 3).

Considering the record before it, the Court finds that the auxiliary table at the meat market counter meets the regulatory standard set by § 7.2(2)(ii) of the 1991 ADAAG. *See* Lockhart v. Coreas, No. 10-CV-1644 (SJF/ETB), 2011 WL 2516569, at *9 (E.D.N.Y. June 21, 2011) (finding that the provision of an auxiliary service table satisfied § 7.2(2)(ii) of the 1991 ADAAG and thus defendant fulfilled "its obligations under the ADA, [and] the Court need not decide whether [defendant] has complied with ADAAG § 7.2(2)(iii)."). Accordingly, the alleged architectural violations under the ADA at the SuperMax store's meat market counter was

Civil No. 3:22-01274 (GMM)
Page -27-

effectively remedied by the provision of the auxiliary service table.[7]

As such, SuperMax's request for summary judgment on this point is **GRANTED** and Betancourt's request for summary judgment is **DENIED**.

    iv. <u>Integrated countertops at the Açaí Shop, Café Max, and the plant section the SuperMax store</u>

Following Plaintiff's initiation of this lawsuit, SuperMax asserts that it integrated counters within the required maximum 36-inch height from the finished floor elevation at the Açaí Shop, Café Max, and plant section of the SuperMax store. (Docket Nos. 42-2 ¶ 15-16; 42-13 at 10-11). In response, Betancourt argues that there is a paucity of evidence showing that SuperMax's remedial actions were sufficient to demonstrate that the integrated counters met "other critical ADA accessibility requirements." (Docket No. 56-1 ¶¶ 14-15). Specifically, Plaintiff notes that there is no confirmation that the integrated counters have "adequate clear floor space for a forward or parallel approach [or] proper knee and toe clearance dimensions." (<u>Id.</u>).

Betancourt's allegations that the integrated counters at the SuperMax store's Açaí Shop, Café Max, and plant section, may nevertheless remain in violation of the ADA lack any specificity.

---

[7] The Court notes that Plaintiff raises additional objections to the use and staffing of the auxiliary service table. Such objections are later addressed in the Court's analysis of SuperMax's alleged non-structural ADA violations.

At summary judgment, Plaintiff "bears the burden of producing sufficient evidence to defeat summary judgment regarding each of the store's alleged ADA violations because he would bear the burden of proving such violations at trial." Doran, 524 F.3d at 1048. Betancourt offers no evidence that the integrated counters fail to meet other structural requirements set by the ADAAG. The photographs supplied by SuperMax demonstrate the counters in these areas of the SuperMax store now comply with the applicable height requirements, which were the object of Plaintiff's Complaint regarding these counters. Thus, on these points, the record shows that these "architectural barrier object[s] of plaintiff's ADA claim. . .[are] no longer present, and plaintiff is free to enjoy the[se] goods, services, and facilities of. . .[the] store fully and equally." Plaza Las Americas, Inc., 2024 WL 866271, at *4 (*citing* 42 U.S.C. § 12182(a)).

Thus, SuperMax's request for summary judgment on this point is **GRANTED**.

### v.  The checkout aisles and counters

In the original Complaint, Plaintiff alleges that counters and aisles of the SuperMax store failed to comply with the 2010 ADAAG Standards by: (1) not meeting the set dimensions requirements; and (2) not being labeled with the international accessibility symbol. (Docket No. 9-2 at 7-8). SuperMax asserts

that "[o]n December 11, 2023, SuperMax expert inspected the
[SuperMax store] and concluded that the checkout aisles. . .are in
compliance with the 1991 ADA Guidelines." (Docket Nos. 42 at 4;
42-13 at 5-9). Betancourt responded by stating that although he
was attended at a checkout counter marked as accessible on his May
3, 2022 visit to the SuperMax store, in his personal experience,
"staffing of checkouts designated for disabled customers remains
variable and unreliable from occasion to occasion." (Docket No.
56-1 at 3).

In his response to SuperMax's *Motion for Summary Judgment and
Memorandum of Law in Support*, Plaintiff appears to concede that
the SuperMax store's checkout aisles and counters comply with the
ADAAG's physical standards. The Court nevertheless finds that the
checkout aisles conform to the physical structures set by both the
1991 and 2010 ADAAG. Briefly, section 7.3 of the 1991 ADAAG sets
forth that accessible checkout counters shall among other things:
(1) "not exceed 38 in (965 mm) above the finish floor;" (2) have
signage identifying accessible checkout aisles mounted above those
aisles; and (3) comply with the section 4.2.1. requirement that
aisles measure the minimum wheelchair passage width of "32 in (815
mm) at a point and 36 in (915 mm) continuously." 28 C.F.R. Pt. 36,
App. D §§ 4.2.1, 7.3(2-3). Similarly, the 2010 ADAAG standards
require checkout counters to be: (1) "38 inches (965 mm) maximum
above the finish floor or ground"; (2) be identified by the

Civil No. 3:22-01274 (GMM)
Page -30-

International Symbol of accessibility; and (3) provide a walking surface with a minimum 36 inches (915 mm) width, with the exception of a reduced path width of 32 inches (815 mm) for a limited distance of 24 inches (1220mm). *See* 28 C.F.R. 35.151 §§ 904.3.2, 216.11, 703.7.2.1, 403.

The expert report submitted by SuperMax found that the SuperMax store has three checkout aisles with cash registers that are designated for persons with disabilities. (Docket Nos. 42-2 ¶ 13-14; 42- 13 at 8-9). The expert found that each of these checkout aisles was labeled with the requisite signage, had a width of 38 inches, and had counters with a maximum height of 37.5 inches. (Id.). Plaintiff did not contest these findings. The Court thus concludes that the physical characteristics of the facility's checkout aisles and counters are ADA compliant.

As such, SuperMax's request for summary judgment on this point is **GRANTED**.

2.   Non-structural Barriers that Amount to
     Discrimination under the ADA

To succeed in an ADA claim challenging a public accommodation's practices or policies, a plaintiff must demonstrate "that the defendant has a discriminatory policy or practice in effect; that. . .the plaintiff requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; that the requested

modification. . .was necessary to afford that access; and that the defendant nonetheless refused to modify the policy or practice." Dudley, 333 F.3d at 307 (*citing* PGA Tour, Inc. v. Martin, 532 U.S. 661, 683 (2001)). "The operative provision, 42 U.S.C. § 12182(b)(2)(A)(ii), requires a person with a disability to request a reasonable and necessary modification, thereby informing the operator of a public accommodation about the disability." Id. A plaintiff must request a reasonable modification before filing his or her complaint to make a *prima facie* showing of ADA discrimination. *See* CADFI Corp. v. Puerto Rico Tel. Co., No. CV 22-1246 (BJM), 2024 WL 866269, at *5; Betancourt Colon v. Puerto Rico Convention Ctr. Dist. Auth., Civil No. 22-01288 (MAJ), 2023 WL 5163320, at *4 (D.P.R. Aug. 11, 2023).

a.   The understaffing of counters

Plaintiff contends that SuperMax engages in a discriminatory practice of understaffing various counters throughout the SuperMax store that are designated to serve persons with disabilities. Firstly, Betancourt states that the three checkout aisles with cash registers designated for persons with disabilities violate the ADA as they are only intermittently attended by staff. (Docket No. 56-1 ¶¶ 8, 13). Betancourt also avers that SuperMax failed to demonstrate that the integrated counters at the SuperMax store's Açaí Shop, Café Max, and plant section were properly staffed or

Civil No. 3:22-01274 (GMM)
Page -32-

otherwise usable for individuals with disabilities. (Id. ¶¶ 14 – 15). Finally, Plaintiff contends that the installed auxiliary service tables were left unstaffed and required him "to press a [bell] button, which often does not emit any sound, resulting in him being offered 'special assistance.'" (Id. ¶¶ 8; 17-18, Docket No. 42 ¶¶ 9-10).

The Court finds these arguments to be insufficient to sustain a *prima facie* claim that SuperMax's policies and practices violate Title III of the ADA. Even assuming *arguendo* that the SuperMax store's disability-designated checkout aisles and integrated counters have been left unattended, Plaintiff failed to provide any evidence that he requested any modifications to SuperMax's staffing practices or that SuperMax declined to change its practices to accommodate Betancourt's disability. As to the service provided at the meat market counter, Betancourt did not indicate that he had informed SuperMax that the bell at the auxiliary service table was insufficient to accommodate his disability. Rather, Plaintiff's own statement of uncontested facts indicated that upon ringing the auxiliary service table's bell he was provided with 'special assistance,' indicating that SuperMax accommodated his disability. (Docket No. 42 ¶ 9). Accordingly, based on the record before it, the Court cannot conclude that SuperMax's policies and practices at the SuperMax store are in violation of the ADA.

Civil No. 3:22-01274 (GMM)
Page -33-

    B.   <u>Attorney's Fees</u>

    Plaintiff requests that the Court award him attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205 and Section 505 of the Rehabilitation Act. However, Plaintiff neither briefed nor argued this claim in any of his dispositive motion filings. SuperMax, on the other hand, only addressed Plaintiff's attorney's fees demand insomuch as averring that Plaintiff is not the prevailing party to this dispute and is thus not entitled to any such award. Accordingly, Betancourt's request for attorney's fees at summary judgment is **DENIED WITHOUT PREJUDICE**, pending further briefing in consideration of the Court's rulings herein. On or before June 6, 2024, Parties shall file simultaneous briefs regarding attorney's fees.

    C.   <u>Mootness</u>

    SuperMax argues that Plaintiff's causes of action under Title III of the ADA are mooted by the renovations it made to the facility to correct the alleged architectural barriers. (Docket No. 42 at 16-17). The Court determined that the SuperMax store's customer service counter remains in violation of the 1991 ADA Guidelines. Considering the Court's findings, SuperMax's claim of mootness is inapplicable.

    A case becomes moot when the issues at dispute have been resolved or have ceased, whereby "the court cannot give any effectual relief to the potentially prevailing party." <u>Am. Civ.</u>

Civil No. 3:22-01274 (GMM)
Page -34-

Liberties Union of Mass. v. U.S. Confs. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (internal quotation marks and citations omitted). "The burden of demonstrating mootness is a heavy one." Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) (internal quotation marks omitted); see also United States v. W. T. Grant Co., 345 U.S. 629, 632-633 (1953). Private parties suing under Title III of the ADA are entitled to injunctive relief. *See e.g.* Goodwin v. C.N.J., Inc., 436 F.3d 44, 50 (1st Cir. 2006). Thus, as here, when the claimed discrimination at a place of public accommodation persists, the Court retains the power to provide relief to an injured party. The Court must accordingly reject SuperMax's assertion that this case has been mooted by removal of the alleged barriers prior to trial.

## VI.   CONCLUSION

For the foregoing reasons, SuperMax's *Motion for Summary Judgment* is GRANTED IN PART and DENIED IN PART, as follows:

     a. **DENIED** as to the customer service counter;

     b. **GRANTED** as to the meat market counter;

     c. **GRANTED** as to the counters at the SuperMax store's Açaí Shop, Café Max, and plant section;

     d. **GRANTED** as to the checkout aisles and counters.

Plaintiff's *Motion for Partial Summary Judgment* is likewise GRANTED IN PART and DENIED IN PART, as follows:

**Civil No. 3:22-01274 (GMM)**
**Page -35-**

       a. **GRANTED** as to the customer service counter;

       b. **DENIED** as to the meat market counter.

As such, on or before July 22, 2024, SuperMax is ordered to bring the customer service counter into compliance with the 2010 ADAAG. *See* 28 C.F.R. § 36.406(a)(5)(ii) (facilities subject to 1991 ADAAG that violate the same must then be altered to comply with the 2010 Guidelines).  Parties are also ordered to file their simultaneous briefings regarding attorney's fees on or before June 6, 2024.

IT IS SO ORDERED.

In San Juan, Puerto Rico, May 23, 2024.

                         s/Gina R. Méndez-Miró
                         GINA R. MÉNDEZ-MIRÓ
                         UNITED STATES DISTRICT JUDGE